CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

APR 13 2017

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal Action No. 7:05CR00078 |
| | ) | (Civil Action No. 7:16CV81148) |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| SHERWOOD FARROW, | ) | |
| | ) | By: Hon. Glen E. Conrad |
| Defendant. | ) | Chief United States District Judge |

Defendant Sherwood Farrow, through counsel, has filed a motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255. He argues that following the decision of the United States Supreme Court in Johnson v. United States, 135 S. Ct. 2551 (2015), his sentence for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g), is unlawful because he no longer has the requisite number of convictions to support an enhanced sentence under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). The government moved to dismiss. The court held the case in abeyance pending a decision by the Supreme Court in Beckles v. United States, 15-8544. The Supreme Court has now decided that case, 137 S. Ct. 886 (2017), and so the court will vacate the stay order and expedite review. After careful review of the record, and in light of Johnson, the court will grant Farrow's § 2255 motion, and deny the government's motion to dismiss.

## I.

On October 20, 2005, a federal grand jury indicted Farrow in a superseding indictment for: (1) conspiring to distribute and possess with intent to distribute 50 grams or more of a substance containing a detectable amount of crack cocaine, in violation of 21 U.S.C. § 841(a)(1) ("Count One"); (2) distributing or possessing with intent to distribute five grams or more of a mixture or substance containing a detectable amount of powder cocaine, in violation of 21

U.S.C. § 841(a)(1) ("Counts Two, Five, and Seven"); (3) distributing or possessing with intent to distribute five grams or more of a mixture or substance containing a detectable amount of crack cocaine, in violation of 21 U.S.C. § 841(a)(1) ("Counts Four, Six, and Eight"); (4) being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e) ("Count Nine"); (5) possessing a stolen firearm, in violation of 18 U.S.C. § 922(j) ("Count Eleven"); (6) using and carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. §§ 924(c)(1)(A) and 2 ("Count Thirteen"); and (7) maintaining a place for the purpose of manufacturing, distributing, and/or using a mixture or substance containing crack cocaine, in violation of 21 U.S.C. § 856(a)(1) ("Count Fourteen"). Farrow pleaded guilty, pursuant to a written plea agreement, to Counts One and Nine. Indictment at 2, ECF No. 51.

The Presentence Investigation Report ("PSR"), prepared in anticipation of sentencing, grouped Counts One and Nine, as required under United States Sentencing Guideline ("U.S.S.G.") § 3D1.2(c). The PSR designated Farrow as a career offender under U.S.S.G § 4B1.1 and calculated a total offense level of 34 for Counts One and Nine based on that provision. PSR ¶ 26, ECF No. 75. Farrow also qualified as an armed career criminal under the ACCA, 18 U.S.C. §§ 922(g) and 924(e), which increased the statutory mandatory minimum for Count Nine to 180 months' incarceration. Id. ¶ 70. Without the armed career criminal designation, Farrow's statutory maximum for Count Nine would have been capped at 120 months' incarceration.

The PSR listed the following prior felony convictions to support Farrow's status as a career offender: a 1981 conviction for Virginia robbery and a 1985 conviction for aggravated sexual battery. Id. ¶¶ 33, 36. The PSR did not specify the convictions used to support Farrow's ACCA enhancement, but in addition to the convictions used to support his career offender status, he had a 1975 conviction for Virginia burglary and a 1976 conviction for five counts of Virginia

2

burglary. Id. ¶¶ 30, 32. The PSR recommended a criminal history category of VI, resulting in a guideline imprisonment range of 262 to 327 months. Id. ¶ 71.

The court adopted the PSR recommendation and sentenced Farrow to a total of 262 months' incarceration on each count to run concurrently. Judgment at 2, ECF No. 55. Farrow appealed, challenging the validity of his guilty plea hearing and the reasonableness of his sentence. The United States Court of Appeals for the Fourth Circuit affirmed. United States v. Farrow, No. 06-4615, 2006 U.S. App. LEXIS 32082 (4th Cir. Dec. 29, 2006). Farrow then filed a § 2255 motion on January 22, 2014, arguing that he received ineffective assistance of counsel at sentencing and on direct appeal, which this court dismissed as untimely. Order at 1, ECF No. 101. Farrow appealed but the Fourth Circuit dismissed his petition. United States v. Farrow, 579 F. App'x 158 (4th Cir. 2014).

On September 8, 2015, pursuant to Standing Order 2015-5, the court appointed the Federal Public Defender's Office to represent Farrow with regard to any Johnson claims that he might have. On July 14, 2016, he received authorization to file a successive § 2255 motion, and on the same day, through counsel, filed a § 2255 petition asserting that his burglary and robbery convictions can no longer serve as predicate offenses under the ACCA.

## II.

To state a viable claim for relief in a successive § 2255 motion, a petitioner must establish that he is entitled to relief based on "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h)(2). Farrow bears the burden of proving grounds for a collateral attack by a preponderance of the evidence. Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958).

## A. The ACCA Enhanced Sentence Structure

Farrow challenges the viability of the predicate offenses used to support his status as an armed career criminal. Federal law prohibits convicted felons from possessing firearms. 18 U.S.C. § 922(g). Defendants who violate this law are subject to a term of up to ten years' imprisonment. 18 U.S.C. § 924(a)(2). However, when defendants convicted of a § 922(g) charge have three or more prior convictions for "serious drug offenses" or "violent felonies," they qualify as armed career criminals under the ACCA. Armed career criminals face an increased punishment: a statutory mandatory minimum of fifteen years' imprisonment and a maximum of life. 18 U.S.C. § 924(e)(1).

In Johnson, the Supreme Court invalidated part of the definition of "violent felony" under the ACCA. 135 S. Ct. at 2563. The ACCA defines a "violent felony" as:

> [A]ny crime punishable by imprisonment for a term exceeding one year . . . that –
>
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

18 U.S.C. § 924(e)(2)(B). In Johnson, the Supreme Court reviewed the second part of subsection (ii) of the violent felony definition. It concluded that the clause, known as the "residual clause," which provides, "or otherwise involves conduct that presents a serious potential risk of physical injury to another," was unconstitutionally vague. 135 S. Ct. at 2563. The Supreme Court did not, however, strike down the other portions of the violent felony definition, which includes subsection (i), known as the "force clause," and the first part of subsection (ii), delineating specific crimes, known as the "enumerated crimes clause." Johnson, 135 S. Ct. at 2563 (noting

4

that other than the residual clause, the Court's holding "d[id] not call into question . . . the remainder of the [ACCA's] definition of a violent felony"). Therefore, following Johnson, prior convictions that qualified as "violent felonies" under the residual clause can no longer serve as ACCA predicates. The Supreme Court's decision in Johnson announced a new rule of constitutional law that applies retroactively to cases on collateral review. Welch v. United States, 136 S. Ct. 1257, 1268 (2016). Because the court concludes that Farrow is no longer an armed career criminal following Johnson, he is entitled to relief.

### B. Timeliness of Petition

A petition under § 2255 must adhere to strict statute of limitations requirements. Generally, a petitioner must file a § 2255 motion within one year from the date on which his judgment of conviction became final. 28 U.S.C. § 2255(f)(1). However, the statute allows for an additional one-year limitations period from the date on which the Supreme Court recognizes a new right made retroactively applicable on collateral review. Id. at § 2255(f)(3).

Farrow filed his § 2255 motion on July 14, 2016, more than one year from the date of his final judgment in 2006. Accordingly, his motion is untimely under § 2255(f)(1). Nonetheless, his petition is timely under § 2255(f)(3) because he filed it within one year of the Supreme Court's decision in Johnson, 135 S. Ct. 2551, which issued on June 26, 2015.[1] Winston, 850 F.3d 677, 682 (4th Cir. 2017) (holding that a petition was timely under Johnson when the petitioner established that the sentence received "may have been predicated" on Johnson and therefore, "may be an unlawful sentence"). Farrow alleges that his robbery and burglary

---

[1] Farrow, through counsel, first filed a § 2255 motion on June 27, 2016, within one year of the Johnson decision. § 2255 Motion at 1, ECF No. 111. However, he had not yet received authorization from the United States Court of Appeals for the Fourth Circuit to file a successive petition. After he received authorization, the court dismissed his prior § 2255 motion and counsel filed a certified successive petition. Therefore, his petition was filed within one year of Johnson.

5

convictions no longer qualify as predicates following Johnson. That is enough to satisfy the timeliness requirement. Id.

### C. Procedural Default

Farrow did not challenge the constitutionality of the residual clause of the ACCA on direct review, however, he had cause for failing to do so. See generally, Massaro v. United States, 538 U.S. 500, 504 (2003) (noting that claims not raised on direct appeal may generally not be raised on collateral review). An equitable exception to the procedural default rule applies when a petitioner can demonstrate cause and actual prejudice. Bousley v. United States, 523 U.S. 614, 622 (1998). "The existence of cause for a procedural default must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel." United States v. Mikalajunas, 186 F.3d 490, 492-93 (4th Cir. 1999); see also United States v. Pettiford, 612 F.3d 270, 280 (4th Cir. 2010).

Here, Farrow can establish cause because of the novelty of his claim. United States v. Brown, 7:12-cr-00026, 2017 WL 76932, *4, 2017 U.S. Dist. LEXIS 1815 (W.D. Va. Jan 6, 2017). The Supreme Court has made clear that when it establishes "a new constitutional rule, representing a clear break with the past," a petitioner may have been justified in failing to raise the issue on direct review. Reed v. Ross, 468 U.S. 1, 17 (1984). Specifically, the Supreme Court has concluded that a petitioner collaterally attacking his conviction and sentence is "sufficiently excus[ed]" from having raised an issue below when one of its decisions either "explicitly overrule[s] one of [its] precedents" or "overturn[s] a longstanding and widespread practice to which th[e] Court has not spoken, but which a near-unanimous body of lower-court authority has expressed approval." Id. (internal quotation marks omitted).

Those exceptions apply to Farrow's situation. Well before Farrow was sentenced, the Supreme Court had already affirmed the viability of the residual clause. Taylor v. United States, 495 U.S. 575, 597 (1990) (reviewing the legislative history of the ACCA and noting that Congress had a purpose in including each clause of the ACCA and that the residual clause "implied coverage of crimes such as burglary"). In addition, in 1995, the United States Court of Appeals for the Fourth Circuit concluded that the residual clause was not void for vagueness. United States v. Presley, 52 F.3d 64, 68 (4th Cir. 1995). Every other circuit court to consider the issue, both before and after Presley, had come to the same conclusion. See, e.g., United States v. Sorenson, 914 F.2d 173, 175 (9th Cir. 1990); United States v. Veasey, 73 F.3d 363, *2 (6th Cir. 1995) (unpublished); United States v. Childs, 403 F.3d 970, 972 (8th Cir. 2005); United States v. Hart, 674 F.3d 33, 41 n.3 (1st Cir. 2012). Finally, in 2007, the Supreme Court had made a definitive ruling on the issue, and explicitly rejected a vagueness challenge to the ACCA's residual clause in James v. United States, 550 U.S. 192, 210 n. 6 (2007) ("[W]e are not persuaded . . . that the residual provision is unconstitutionally vague.").

The recent decision in Johnson expressly overruled James. Johnson, 135 S. Ct. at 2563 ("Our contrary holding[] in James . . . [is] overruled."). Although "futility cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time," this is not such a situation. Bousley, 523 U.S. at 622. Every court of appeals to consider the issue had rejected a vagueness challenge to the ACCA's residual clause, creating a longstanding and widespread body of law supporting its constitutionality. Therefore, the court is satisfied that Farrow is "sufficiently excus[ed]" from having raised his Johnson claim before the district court at sentencing or on direct appeal. Reed, 468 U.S. at 17.

7

In addition, Farrow has established actual prejudice. Bousley, 523 U.S. at 622. His status as an armed career criminal subjected him to a statutory mandatory minimum sentence of 180 months and he was sentenced to 262 months on Count Nine. Had he not been classified as an armed career criminal, he would have faced a statutory maximum sentence of 120 months on Count Nine. His guideline range for Count One was not directly affected by his status as an armed career criminal but Counts One and Nine were grouped for sentencing purposes. Therefore, Farrow has demonstrated both cause and actual prejudice for his failure to raise a residual clause challenge on direct review; accordingly, the court concludes that his claims are not procedurally defaulted and can be reviewed on the merits.

**D. Predicate Offenses and the ACCA**

Farrow challenges his status as an armed career criminal. Because the court concludes that Virginia common law robbery and Virginia statutory burglary, Virginia Code § 18.2-91, can no longer be used to support his armed career criminal designation, and that Farrow is entitled to relief.[2]

1. Virginia Robbery

Virginia robbery can no longer support an armed career criminal designation. The United States Court of Appeals for the Fourth Circuit has conclusively established that "Virginia common law robbery does not qualify as a violent felony under the ACCA." Winston, 850 F.3d at 679. Therefore, Farrow's 1981 conviction for Virginia robbery cannot be used to support his status as an armed career criminal.

---

[2] Because the court concludes that Farrow's Virginia robbery and burglary convictions no longer support his armed career criminal designation, it need not determine the viability of his aggravated sexual battery conviction for ACCA purposes.

8

## 2. Virginia Burglary

In addition, Farrow is entitled to relief because his predicate convictions for Virginia burglary also no longer qualify as violent felonies, making him ineligible for the ACCA enhancement. Brown, 2017 WL 76932, *5-7 (concluding that a Virginia burglary conviction cannot support an ACCA enhancement because the Virginia statute establishes one crime that is broader than generic burglary). In 1975 and 1976, Farrow pleaded guilty to statutory burglary charges, a violation of Virginia Code § 18.2-91, which provides, "[i]f any person commits any of the acts mentioned in § 18.2-90 with intent to commit larceny, or any felony other than murder, rape, robbery or arson . . . he shall be guilty of statutory burglary." Virginia Code § 18.2-90, in turn, provides the elements of statutory burglary and read at the time of Farrow's conviction:

> If any person in the nighttime enter without breaking or in the daytime break and enter a dwelling house or an outhouse adjoining thereto and occupied therewith or in the nighttime enter without breaking or break and enter either in the daytime or nighttime any office, shop, storehouse, warehouse, banking house, or other house, or any ship, vessel or river craft or any railroad car, or any automobile, truck or trailer, if such automobile, truck or trailer is used as a dwelling or place of human habitation, with intent to commit murder, rape, or robbery, he shall be deemed guilty of statutory burglary . . . .

Va. Code § 18.2-90 (1975).

Although the ACCA lists burglary as one of the enumerated offenses, a defendant's prior conviction can qualify as a "burglary" under the ACCA only if it was a conviction for "generic burglary." In 1990, the Supreme Court concluded that "regardless of technical definitions and labels under state law," Congress "had in mind a modern 'generic' view of burglary" when it enacted the ACCA. Taylor, 495 U.S. at 589, 590. The Court went on to define generic burglary as: "an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime." Id. at 598.

9

There is no question that the Virginia burglary statute defines the crime of burglary more broadly than the generic definition, as the government concedes. This is because the Virginia burglary statute includes entry into locations other than a building or structure, including "any ship, vessel or river craft or any railroad car, or any automobile, truck or trailer, if such automobile, truck or trailer is used as a dwelling or place of human habitation." Va. Code Ann. § 18.2-90; see also Taylor, 495 U.S. at 599 (concluding that a Missouri burglary statute, which similarly criminalized the breaking into places such as boats, vessels and railroad cars, was broader than generic burglary). In addition, the Virginia burglary statute is broader than generic burglary because it allows for a conviction without unlawful entry when a defendant enters "in the nighttime." Va. Code Ann. § 18.2-90; see also Descamps v. United States, 133 S. Ct. 2276, 2282 (2013) (noting that a California burglary statute that does not require unlawful entry, "goes beyond the normal, 'generic' definition of burglary").

In addition, the Virginia burglary statute, § 18.2-90, is indivisible, that is, it "enumerates various factual means of committing a single element" or crime, and does not list multiple crimes. Mathis v. United States, 136 S. Ct. 2243, 2249 (2016); see also Brown, 2017 WL 76932, *5-7. In Graybeal v. Commonwealth, the Virginia Supreme Court made clear that the various locations listed in the Virginia burglary statute provide different means of committing one crime. 324 S.E.2d 698, 699 (Va. 1985). Graybeal was indicted for burglary of an "office or storehouse," but the evidence at trial showed that Graybeal had broken into unoccupied mobile homes and trailers on a mobile home sales lot. Id. The Virginia Supreme Court concluded that the evidence did not establish that Graybeal had burgled an "office or storehouse," as alleged in the indictment. It then went on to consider "whether the evidence provided a violation of any

10

other provision of Code § 18.2-9[0]."[3] Id. The Court determined that the only possible location listed in the statute that Graybeal could have entered was a "trailer" because "[n]one of the other statutory categories plainly, obviously, or rationally applie[d] to the facts." Id. at 700. The Court also concluded that even though the evidence established that the mobile homes Graybeal had broken into qualified as "trailers," the government had not shown that they were currently being used for habitation, an element that must be proved beyond a reasonable doubt to a jury.[4] Id. It seems clear that had the evidence established that the trailer was inhabited, the Supreme Court would have affirmed Graybeal's conviction even though he was not so charged. Because the Graybeal Court considered the locations within the statute to be interchangeable, this court concludes that § 18.2-90 provides only one indivisible crime.

Moreover, the Virginia appellate courts have not required that an indictment specify the location of the burglary. To the contrary, they have noted that the Commonwealth can charge a defendant "generally with statutory burglary" without listing specifics. Scott v. Commonwealth, 636 S.E.2d 893, 897 (Va. App. 2006); see also Descamps, 133 S. Ct. at 2290 (noting that "[a] prosecutor charging a violation of a divisible statute must generally select the relevant element

---

[3] The Graybeal opinion lists the code provision as § 18.2-91. However, this appears to be a typographical error as § 18.2-90 lists the various places in which statutory burglary may occur.

[4] Although Virginia Code § 18.2-90 incorporates an additional proof element for automobiles, trucks or trailers—that they be "used as a dwelling or place of human habitation,"—the court does not conclude that breaking and entering these vehicles comprise a different crime within the statute. Each location will require proof of different facts, a ship will require proof that the premises was a water craft, a store will require proof that it is affixed to realty, etc. But based on Graybeal, it appears that Virginia statutory burglary, no matter where it takes place, comprises one crime. Even if the statute does set forth two locational elements, and therefore two crimes: (1) burglary of places on land, sea and rail, and (2) burglary of automobiles, trucks and trailers used for habitation, neither of those crimes conforms to generic burglary. See United States v. Caberera-Umanzor, 783 F.3d 347, 352 (4th Cir. 2013) ("General divisibility, however, is not enough; a statute is divisible for purposes of applying the modified categorical approach only if at least one of the categories into which the statute may be divided constitutes, by its elements, a crime of violence."); Cf. United States v. Gundy, 842 F.3d 1156, 1168 (11th Cir. 2016) (concluding that the Georgia burglary statute, which includes a habitability requirement for vehicles, establishes a separate element of the offense resulting in divisibility). Generic burglary requires breaking into a building or premises permanently attached to real property, but the first grouping of locations in § 18.2-90 includes water and rail vehicles and the second grouping involves only mobile vehicles. As a result, "no conviction under the law could count as an ACCA predicate." Mathis, 136 S. Ct. at 2249.

from the list of alternatives"); Cf. United States v. Gundy, 842 F.3d 1156, 1167 (11th Cir. 2016) (noting that Georgia courts have consistently held that "the prosecutor must select and identify the relevant statutory locational element" in the indictment).

The statute, itself, reinforces the conclusion that the statute is indivisible. It provides for the same punishments for breaking and entering into all of the listed locations. Cf. Mathis, 135 S. Ct. at 2256 ("If statutory alternatives carry different punishments, then under Apprendi [v. New Jersey, 530 U.S. 466, 490 (2000)] they must be elements"). Moreover, the Virginia statutory scheme codifies generic common law burglary in a separate statute, Virginia Code § 18.2-89, establishing distinct burglary crimes under different code sections.

Therefore, the court concludes that Virginia statutory burglary under § 18.2-90, is both broader than generic burglary and indivisible. Because Virginia statutory burglary cannot qualify as a predicate under the residual clause following Johnson, and because it cannot qualify as a predicate offense under the enumerated crimes clause in light of Mathis and Descamps, it cannot be used to support an armed career criminal designation under the ACCA.

### E. Relief is Appropriate

Farrow received concurrent 262-month sentences on Counts One and Nine. The court could impose that sentence for Count Nine only because Farrow qualified as an armed career criminal at that time. Because, following Johnson, Farrow's statutory maximum on Count Nine should have been 120 months, "the sentence imposed was not authorized by law." 28 U.S.C. § 2255(b). The court recognizes that Farrow's status as a career offender established his guideline range of 262 to 327 months. The Supreme Court, in Beckles, concluded that an identical residual clause in the career offender guideline is not subject to a vagueness challenge and, therefore, not unconstitutional. 137 S. Ct. at 892. Accordingly, Farrow's status as a career

offender is not subject to constitutional challenge. Nonetheless, courts are granted "broad and flexible . . . power to fashion an appropriate remedy." United States v. Garcia, 956 F.2d 41, 45 (4th Cir. 1992). Because the sentences for Counts One and Nine were grouped, and therefore, interdependent, the court believes that the appropriate remedy is to resentence Farrow on both convictions. See, e.g., In re Davis, 829 F.3d 1297, 1300 (11th Cir. 2016) (concluding that where a court sentenced a defendant based on a single sentencing guideline range for a felon in possession charge and a drug conspiracy charge, the defendant may obtain relief).

### III.

Farrow no longer qualifies as an armed career criminal and is entitled to resentencing. Therefore, the court will grant Farrow's motion to vacate and deny the government's motion to dismiss. An appropriate order will be entered this day.

**ENTER:** This 13rd day of April, 2017.

*/s/ Conrad*
Chief United States District Judge